IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **LIBERTY MUTUAL INSURANCE COMPANY AS ADMINISTRATOR AND ASSIGNEE OF DEVELOPERS SURETY AND INDEMNITY COMPANY** )<br>)<br>)<br>)<br>) | |
| **Plaintiff,** )<br>v. ) | Civil Action No.: 1:20-cv-01961-SAG |
| )<br>**JESSE J. MURPHY,** *et al*. )<br>)<br>**Defendants.** ) | |

### PLAINTIFF LIBERTY MUTUAL INSURANCE COMPANY'S OPPOSITION TO DEFENDANTS' RENEWED MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff, Liberty Mutual Insurance Company as administrator and assignee of Developers Surety and Indemnity Company, ("Liberty") by and through its undersigned counsel, and pursuant to Rule 12 of the Federal Rules of Civil Procedure files this opposition to defendants' renewed Motion to Dismiss Amended Complaint (Doc. No. 18). Rather than restate all its previous arguments in opposition to arguments previously raised in defendant's original motion to dismiss under Rule 12(b)(1) and 12(b)(6), plaintiff incorporates by reference its opposition (Doc. No. 19) and further states in support of its opposition as follows:

### Summary

Under the *Erie* doctrine, this Court, sitting in diversity, cannot deprive the plaintiff of the time to file its claims that it would have enjoyed had it filed suit in a Maryland state court. The Maryland Court of Appeals extended the three-year statute of limitations period by 84 days, making this suit timely filed as to all five claims and their attendant costs. Even without an applicable tolling order, however, plaintiff pleads claims within the purported three-year statute of limitations period in amounts sufficient to exceed the diversity threshold. This is because the date

of accrual for indemnity actions is the date of payment in settlement or judgment, not the date of payment of all associated costs paid before arriving at payment of the claim itself. Moreover, the contractual term for attorneys' fees creates a substantive right to the fees incurred in the prosecution of this litigation, requiring including those fees in the calculation of the amount in controversy. Attorneys' fees to date combined with the uncontested claims exceed the diversity jurisdiction threshold. Thus, defendants' renewed motion to dismiss plaintiff's Amended Complaint on Rule 12(b)(1) and 12(b)(6) grounds should be denied.

## Argument

I.  **A federal order cannot extend or contract a state statute.**

Federal courts sitting in diversity must apply the rule of law of the state governing the action. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 108-09 (1945) (ignoring questions of substance versus procedure in applying the state statute of limitations and holding that "a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State…"). Federal courts do not limit their application of state law in diversity cases to statutes. *Erie R. Co. v. Tompkins*, 304 at 78. Instead, federal courts must apply state law whether created by the legislature or the state's highest court. *Id*. The *Erie* Doctrine aims to ensure that in diversity actions, "the outcome of the litigation in federal court should be substantially the same, so far as legal rules determine the outcome of the litigation, as it would be if tried in a State court." *Guaranty Trust Co. v. York*, 326 at 109.

All five claims are timely filed under Maryland Code, Cts. and Jud. Proc., § 5-101 and the Maryland Court of Appeals' broad emergency orders tolling statutes of limitations in all actions applying Maryland law. *See* Exhibits D and E to the Amended Complaint (Doc. No. 17), Maryland Court of Appeals Orders dated April 24, 2020, and June 3, 2020. Maryland's highest court entered

judicial orders tolling all Maryland statutes of limitations for the time period of the court's closure in response to the COVID-19 pandemic. *Id*. The Maryland Court of Appeals' June 3, 2020, order provided for blanket tolling without evaluation of a party's hardship in filing during the closure.

In *Guaranty Trust*, the court found that where a state law precluded the party's right to recover in equity, a more lenient federal rule could not restore the right. *Id*. at 110; *see also Ragan v. Merchants Transfer & Warehouse Company*, 337 U.S. 530, 533-34 (1949) (holding "[w]e cannot give … [the limitations period] longer life in the federal court than it would have had in the state court without adding something to the cause of action."); *see also Walker v. Armco Steel Corp.*, 446 U.S. 740, 745-746 (1980) (declining to apply a federal rule to define the commencement of an action for purposes of tolling the statute of limitations and instead deferring to the state's procedural law as integral to the statute). In the *Walker* case, the Supreme Court based its holding largely on the plaintiff's admission that had it filed in Oklahoma state court, its claim would be time-barred. The Court declined to give the case greater life than it could have expected in state court. The premise of these cases is applicable here—if a claim could be timely brought in state court, it can also be brought in federal court. Federal courts sitting in diversity must defer to state law for the commencement of a case to the exclusion of its own Federal Rules in diversity actions.

Defendants rely on this Court's own emergency order, which they contend affirmatively declined to extend statutes of limitation during the pandemic as a basis for dismissal. The district court's order did not speak to diversity actions because it has no power to limit or expand state statutes of limitations. The district court qualified its order, refusing to extend only "applicable" statutes of limitation. Under the *Erie* Doctrine, the district court cannot create a situation in which the federal system affords greater or fewer rights than a state court for diversity actions. Consequently, the district court's exclusion of the tolling of statutes of limitations does not apply

3

to diversity actions. Instead, it applies to cases brought under federally created rights, exclusive to the federal system.

Plaintiff points to Judge Chasanow's recent interpretation of the applicability of Maryland's state tolling order in a slip opinion from May 26, 2020, that is not binding on this court to suggest that the District Court will give no credence to State Court tolling orders. Defendants' attempt to fashion a broad philosophy from a narrow holding must be rejected. In this slip opinion, the statute at issue, 28 U.S.C. § 1446(b), is a federal statute related to the 30-day time period for removal from state court to federal court. *See Spelta v. Bakker*, 2020 WL2732070 (May 26, 2020) (attached as Exhibit A). Judge Chasanow held that the district court did not have the power to extend this 30-day period prescribed by statute. *Id*. (relying on *Stone Street Capital, Inc. v. McDonald's Corp.*, 300 F.Supp.2d. 345, 346 (D. Md. 2003)). Judge Chasanow agreed with Federal Practice and Procedures § 3731 (Rev. 4th ed. 2020) that no state court order, demurrers, or trial continuances could extend the 30-day time limit for removal in 28 U.S.C. § 1446(b) either. The conclusion that neither a state court ruling or statute, nor indeed a federal court, can enlarge a federal statute is specific to the extension of a time limit mandated by federal law. *Id*. at *3. The holding does not, however, restrict a litigant's substantive right to bring a cause of action in federal court that it would be able to bring in state court. The state court order extending the limitation period due to the pandemic in the case at bar does not seek to extend or contract a federal rule or statute as in *Spelta*. Rather, under *Erie*, this court sitting in diversity must honor Maryland's highest court's order extending the state statute of limitations.

Under the Maryland Court of Appeals June 3, 2020, order, plaintiff would have enjoyed another 49 days to file its cause of action after the court reopened on July 20, 2020. By filing in the U.S. District Court for the District of Maryland on July 2, 2020, plaintiff's filing is far inside that extended statute of limitations. If this Court does not apply the Maryland Court of Appeals'

order, it will violate a long-standing, fundamental legal doctrine of civil procedure and create an inequitable outcome, foreclosing rights that would have been available to plaintiff but for its choice to file in diversity in federal court, exactly the outcome *Erie* and its progeny aim to avoid.

**II.     Even applying a three-year statute of limitations and no tolling, sufficient claims survive to meet the federal diversity jurisdiction threshold under 28 U.S.C. Code § 1332.**

Should the district court impose a three-year statute of limitations on plaintiff's claims without the benefit of the Maryland Court of Appeals' emergency orders to this action, sufficient of plaintiff's claims collectively exceed the jurisdictional threshold, defeating defendant's motion. The date of accrual of a cause of action for breach of an indemnity obligation occurs when the claim itself is paid—a date clearly occurring within three years of the date of filing for two of plaintiff's claims. In addition, and alternatively, the fact that plaintiff's claim for attorneys' fees to prosecute this action is a substantive right born of the General Indemnity Agreement ("GIA") requires including those damages in the jurisdictional calculation.  Plaintiff's claims pled in the Amended Complaint that its damages, including both investigative costs, settlement payments and the legal fees for prosecuting this suit, satisfy the diversity jurisdictional threshold, and defendants' motion must be denied.

    **A.     Plaintiff's Claims Accrued Within Three Years of the Date of Filing**

Until a settlement is paid, an indemnity claim is "an inchoate claim which does not ripen into being unless and until [the indemnitor] pays the [claimant]." *Cotham & Maldonado v. Board*, 260 Md. 556, 566-67 (1971); *see also Whiting-Turner Contracting Co. v. Coupard*, 304 Md. 340, 347, 348 (1985) (holding the time of accrual is the payment in settlement of the claim); *see also Southern Maryland Oil Co. v. Texas Co.*, 203 F. Supp. 449, 452 (1962) (holding that the "[indemnity right] did not fully ripen until the consequential damages were incurred, that is, until the date of settlement"). Thus, contrary to defendants' argument, the correct marker for commencing a limitation analysis

is when the plaintiff paid claimants under the bond and the right to indemnity accrues, not when plaintiff incurred costs to investigate or evaluate those claims.

Defendants seek to exclude the costs incurred for investigation of claims as well as their administration and negotiation through attorneys based upon the date plaintiff incurred these costs, some of which are admittedly more than three years before filing the instant suit. Maryland has held consistently, however, that until an indemnity claim has fully ripened, the statute of limitations period does not accrue. *Id.* That moment of accrual does not occur at the payment of costs in any way related to a potential claim; it accrues at the time of payment for the claim itself, whether by settlement or judgment. This conclusion is consistent with the GIA underpinning this case, which states:

> Indemnitors agree to fully and continuously indemnify Surety against any and all Loss or expenses of every kind or nature, including, without limitation, those incurred: (i) by reason of having executed or procured the execution of any Bond, (ii) by reason of the failure of any Indemnitor to perform or comply with the covenants and conditions of this Agreement, and (iii) enforcing any of the covenants and conditions of this Agreement. Also, Indemnitors agree to indemnify Surety against the fees and disbursements of counsel whether on salary, retainer or otherwise.

Under the terms of the GIA, indemnitors are liable for costs associated with their failures to perform under the bond. To ascertain whether such a failure has occurred, investigation and administration of claims against the bond are necessary. Anything less would likely be termed bad faith. Furthermore, negotiation and sometimes litigation are necessary to arrive at an appropriate amount of the claim. Until a settlement is paid, however, all those associated costs are "inchoate" and "unripe." To find otherwise would require a surety to file multiple lawsuits for costs associated with as yet unpaid claims as the only way to ensure a full recovery and the benefit of the full statute of limitations period. Under defendants' interpretation of the law, time and resources spent in good faith determining whether a claim is actually due and negotiating a settlement counts against

the three-year statutory period allowed by the Legislature.[1] Therefore, the only way for the surety to obtain the benefit of the full statute of limitations period envisioned by the Legislature would be to pay the claim without investigation or negotiation, thereby making the contract term allowing for the payment of such costs meaningless.

Plaintiff alleges in its Amended Complaint that it paid Maryland Concrete Foundations $16,200.00, on August 8, 2017, and paid Merritt Development Consultants $30,100.00 on August 24, 2017. *See* Amended Complaint (Doc. No. 17) at ¶¶ 26 and 31. Both of these claims were paid within three years from the date of filing of the complaint on July 2, 2020, and defendants do not contest their timeliness. In addition, Plaintiff alleges it is owed the consultant and legal fees to investigate, administer, and negotiate the claims, as provided for in the GIA attached as Exhibit A to the Original Complaint (Doc. No. 1). *See* Amended Complaint (Doc. No. 17) at ¶¶ 33 and 35. These two claims and their associated consultant and legal fees total $82,154.30, exclusive of ongoing attorneys' fees and costs related to bringing the instant indemnity case. The causes of action accrued on the date of the payment of settlement regardless of the date of payment of costs associated with arriving at that settlement. To hold otherwise would effectively contract the three-year statute of limitations period or divest the surety of its contractual right to those costs. Surely, Maryland courts intended a simpler solution: indemnity actions accrue on the date of payment in settlement of the claim, not at each of the multiple dates of payment for costs incurred before the inchoate claim accrued or ripened into a cause of action. The two claims made within three years of filing combined with the investigation costs and attorneys' fees exceed the $75,000.00 threshold for diversity actions, preserving the district court's jurisdiction over the case.

---

[1] For example, under defendant's theory, if a surety spends two years investigating, analyzing, negotiating, and perhaps litigating payment of a claim, the surety would then only have a single year from settlement to bring a lawsuit for indemnity to capture all the costs it is contractually entitled to, rather than the three years prescribed by the Legislature.

**B.    Plaintiff's attorneys' fees incurred in this indemnity action are included in the amount in controversy because the GIA creates a substantive right to them.**

The specific terms of the GIA entitle plaintiff to recover from defendants attorneys' fees incurred in the pursuit of an indemnity action.  First, the GIA defines the term "Loss" which the defendant must reimburse to the plaintiff as including:

> Liability incurred or expenses paid in recovering or attempting to recover Loss or other expense paid or incurred in connection with this Agreement, or a Bond.  Such expenses include any fee or commission charged to Surety in recovering or attempting to recover Loss. *In any suit under this Agreement, Surety may recover the additional expenses and reasonable attorneys' fees incurred in such suit.*

(Doc. 17-1)(Emphasis added). Then, in Paragraph 2, the GIA obligates defendants to indemnify for Losses incurred in enforcing its right to indemnity, including associated legal fees and costs:

> fully and continuously indemnify Surety against any and all Loss or expenses of avery kind or nature, including, without limitation, those incurred: (i) by reason of having executed or procured the execution of any Bond, (ii) by reason of the failure of any Indemnitor to perform or comply with the covenants and conditions of this Agreement, and (iii) enforcing any of the covenants and conditions of this Agreement.  Also, Indemnitors agree to indemnify Surety against the fees and disbursements of counsel whether on salary, retainer or otherwise.

Where a contractual clause creates a substantive right to attorneys' fees, as here, such fees are included in calculating the amount in controversy. This principle was established long ago in *Springstead v. Crawfordsville State Bank*, 231 U.S. 541, 542 (1913), where the Court addressed whether fees to be incurred in pursuing recovery on two notes should be included in the calculus of whether the jurisdictional threshold was met.  Answering that question in the affirmative, the *Springstead* Court held "clearly such [attorneys'] fee was no part of the costs, nor was it interest…it gave a right to recover and created a legal obligation to pay." *Id*. at 542.  The basis for including the fees for litigating the suit at issue was that "the moment suit was brought the liability to pay the fee became a 'matter in controversy,' and as such to be computed in making up the requisite jurisdictional amount." *Id*.

8

Here, the terms of the GIA create a substantive right to recover from defendants attorneys' fees incurred during this litigation as well as those incurred before filing related to investigating and adjusting the claims against the bond. Plaintiff claimed attorneys' fees incurred in the prosecution of this suit in multiple allegations of its Amended Complaint (see, e.g., ¶¶ 9, 11, 36, 46, 48, 51 and the prayer for relief). The right to recover attorneys' fees is not conditioned upon success in the suit—defendants agreed to reimburse the plaintiff for attorneys' fees regardless of the outcome of this action.  Because the GIA conferred a substantive right to recover attorneys' fees incurred in any effort to recover indemnity from defendant, including prosecuting this action, and plaintiff claimed those in the suit, plaintiff's attorneys' fees incurred to date and throughout the course of this litigation must be included in the calculation of the amount in controversy.

A federal court may dismiss an action for failing to reach the threshold amount only when "it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). Plaintiff's allegations that it is entitled, as a matter of substantive right, to the fees incurred in prosecuting this case are enough to survive a motion to dismiss.  In any event, although defendants failed to seek in their limited jurisdictional discovery any information related to attorneys' fees incurred in preparation for and during the pendency of this action, plaintiff estimates that it has incurred in excess of $33,612.50 in attorneys' fees related to the indemnity action to date. This amount is certain to grow as the litigation progresses. These fees when added to the claimed amounts that defendants admit fall within the statute of limitations[2] ($79,912.50) exceeds the $75,000 diversity threshold.

## Conclusion

The sum claimed by the plaintiff controls the threshold determination of the amount in controversy in diversity actions. *Id*. at 288. Failure of plaintiff to recover the full amount plead

---

[2] $16,200 + $30,100 + 33,612.50 = $79,912.50

9

does not divest the court of diversity jurisdiction. *Id*. Plaintiff has alleged it has incurred "Losses" as defined in the GIA, which exceed the jurisdictional threshold, either because accrual of the right to indemnity occurred when the claims were paid or because including the legal fees to be incurred in this litigation, when added to the undisputed amounts, surpass the jurisdictional threshold.  The court thus retains jurisdiction over this case, and plaintiff has stated claims on which relief may be granted in this court sufficient to overcome defendants' Rule 12(b)(1) and Rule 12(b)(6) challenges.

WHEREFORE, Plaintiff Liberty Mutual Insurance Company as administrator and assignee of Developers Surety and Indemnity Company, by and through its undersigned counsel, respectfully requests that the Court enter an order denying defendants' Motion to Dismiss Amended Complaint and requiring defendants to file an Answer to the Amended Complaint within 14 days of the entry of the Court's order and for such further relief as the court deems proper.

Dated:  February 8, 2021                                             Respectfully Submitted

**DEVELOPERS SURETY
AND INDEMNITY COMPANY**


/s/ Shannon J. Briglia
Shoshana E. Rothman, Esq. (Bar No. 19683)
Shannon J. Briglia, Esq. (Bar No. 06718)
SMITH, CURRIE & HANCOCK, LLP
1950 Old Gallows Road, Suite 750
Tysons, Virginia 22182
Telephone: (703) 506-1990
Facsimile: (703) 506-1140
serothman@smithcurrie.com
sjbriglia@smithcurrie.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of February, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Joseph L. Katz, Esq.
KATZ LAW
6701 Democracy Blvd., Suite 300
Bethesda, MD 20817
Tel: (410) 499-2615
joe@joekatzlaw.com
*Counsel for Defendants*

        /s/ Shannon J. Briglia
        Shannon J. Briglia