IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE CO. | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: 1:20-cv-01961-SAG |
| JESSE J. MURPHY, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM OPINION

Liberty Mutual Insurance Co. ("Plaintiff") sued J.M. Murphy Enterprises, Inc. ("J.M. Murphy") and Jesse J. Murphy (collectively, "Defendants"), asserting a breach of contract claim involving a construction contract and related surety bonds issued by Developers Surety and Indemnity Company ("Developers").[1]  ECF 17 ¶¶ 45-51.  Defendants have filed a Motion to Dismiss the Complaint ("Motion"), ECF 23.  The issues have been fully briefed, ECF 24, ECF 27, ECF 41, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the following reasons, Defendants' Motion will be denied.

I.   **BACKGROUND**

The following facts are derived from the Amended Complaint, ECF 17, and are taken as true for purposes of evaluating Defendants' Motion.

On August 11, 2016, Developers, as surety, issued Payment and Performance Bonds No. 506266P ("the Bonds") in connection with J.M. Murphy's contract with HASCON, LLC

---

[1] Plaintiff is the administrator and assignee of Developers, by virtue of a reinsurance agreement between the two entities.  ECF 17 ¶ 1.

1

("Hascon") to furnish and install concrete at the Maryland State Police Flight Training Facility at Martin State Airport ("the Project"). ECF 17 ¶¶ 6-7, 14-15; *see also* ECF 1-2 at 1. The Bonds named J.M. Murphy as principal and Hascon as obligee, and guaranteed J.M. Murphy's completion of—and the payment of all labor, materials, equipment, and supplies used in connection with—the Project. *Id.* As partial consideration, Defendants executed an indemnification agreement in favor of Developers ("Indemnification Agreement") providing that they would be jointly and severally liable for certain of Developers' specified losses in connection with the Bonds. *Id.* ¶ 8. As relevant here, the Indemnification Agreement extended to losses incurred by Developers as a result of claims, demands, suits, or settlements against the Bonds, as well as legal fees, costs, and other expenses associated with the investigation or defense of actual or potential claims. *Id.* ¶¶ 8-11. The Indemnification Agreement further provided that if it deemed necessary to protect itself against liability, Developers may demand a collateral reserve from Defendants. *Id.* ¶ 12.

Plaintiff alleges that Defendants subsequently defaulted on obligations in the Project, causing Developers to incur three categories of indemnified monetary losses. First, Developers satisfied several claims against the Payment Bond by subcontractors and suppliers, including: (i) a $17,650.37 payment to Neff Rental, LLC ("Neff") on April 12, 2017; (ii) a $11,134.41 payment to Barker Steel Mid-Atlantic, LLC ("Barker Steel") on April 12, 2017;[2] (iii) a $8,361.82 payment

---

[2] Notably, the Amended Complaint alleges that Developers paid Barker Steel $11,341.11, whereas the Demand Letter reflected a payment of $11,134.41. *Compare* ECF 17 ¶ 25 *with* ECF 1-3 at 2. This roughly $206 discrepancy has resulted in inconsistencies regarding the amounts of alleged damages. *Compare* ECF 41 at 3 (alleging that Developers paid $83,653.33 in claims) *with* ECF 1-3 at 2 (alleging that Developers paid $83,446.60 in claims). Moreover, although the Amended Complaint and Demand Letter both estimate total damages to be $109,300.90, this Court calculated the sum total in the Amended Complaint, given the higher alleged payment to Barker Steel, to be $109,507.60. Although ultimately, these discrepancies may need to be resolved to assess damages, they are not instantly material to this Court's jurisdictional analysis.

to Schuster Concrete Ready Mix, LLC ("Schuster") on April 12, 2017; (iv) a $16,200 payment to Maryland Concrete Foundations, Inc. ("Maryland Concrete") on August 8, 2017; and (v) a $30,100 payment to Merritt Development Consultants, Inc. ("Merritt") on August 24, 2017. *Id.* ¶¶ 21-31. Developers also obtained a $10,000 credit from Hascon as part of a negotiated settlement agreement regarding the Performance Bond, *id.* ¶ 20, resulting in Developers' net payments for claims on the Bonds totaling roughly $73,446.60. Second, Developers spent $11,273.56 on Guardian Group, Inc. ("Guardian"), a surety claims consulting company that investigated claims against the Bonds. ECF 17 ¶ 33. Specifically, Developers paid Guardian Group: (i) $5,432.56 on February 8, 2017; (ii) $5,725.50 on March 22, 2017; and (iii) $115.50 on April 20, 2017. ECF 23-1 (Ex. A, payments to Guardian Group, Inc.). Third and finally, Developers paid $24,580.74 in attorneys' fees to Briglia McLaughlin, PLLC in the following increments: (i) $10,029.70 on March 30, 2017; (ii) $7,414.26 on May 4, 2017; (iii) $3,008.60 on July 19, 2017; (iv) $2,951.96 on October 24, 2017; and (v) $1,176.22 on February 13, 2018. *See* ECF 17 ¶ 35; *see also* ECF 23-2 (Ex. B, payments from Developers to Briglia McLaughlin, PLLC).

On April 2, 2020, Developers issued Defendants a written demand letter ("Demand Letter") seeking immediate collateral in the amount of $109,300.90, which represented the $73,446.60 in claim payments and $35,854.30 in consulting and legal fees paid by Developers described above. ECF 17 ¶ 38; *see also* ECF 1-3. The Demand Letter stated that Developers would proceed with a lawsuit against Defendants if they did not respond by April 17, 2020. ECF 1-3. Defendants did not provide the requested collateral. ECF 17 ¶ 40.

Roughly three weeks later, on April 24, 2020, Chief Judge Mary Ellen Barbera of the Maryland Court of Appeals issued an emergency administrative order ("Emergency Order") in

light of the COVID-19 pandemic, which tolled limitations periods in Maryland state court. ECF 17-2. Specifically, the Emergency Order provided that:

> all statutory and rules deadlines related to the initiation of matters required to be filed in a Maryland state trial or appellate court, including statutes of limitations, shall be tolled or suspended, as applicable, effective March 16, 2020, by the number of days that the courts are closed to the public due to the COVID-19 emergency . . .

*Id.* at 2. The Maryland Court of Appeals revised the Emergency Order on June 3, 2020, to clarify that for purposes of the statute of limitations, deadlines are tolled or suspended from "March 16, 2020 through July 20, 2020." ECF 17-3.

Plaintiff filed suit in this Court on July 2, 2020, invoking federal diversity jurisdiction and alleging damages "in excess of $109,300.90, together with interest, costs, and the additional attorneys' fees and expenses incurred in bringing this action." ECF 17 ¶ 51. Defendants moved to dismiss, asserting that because only $43,535.77 of Plaintiff's alleged damages were timely, the action failed to satisfy the $75,000 amount-in-controversy required to invoke federal diversity jurisdiction. ECF 18; ECF 23. After review, this Court determined that the constitutional validity of the Emergency Order may be determinative of Defendants' Motion. *See* ECF 34. Because the issue presented a substantial, unresolved question of state law, this Court certified the following question to the Maryland Court of Appeals:

> Did the Maryland Court of Appeals act within its enabling authority under, *inter alia*, the State Constitution and the State Declaration of Rights when its April 24, 2020 Administrative Order tolled Maryland's statutes of limitation in response to the COVID-19 pandemic?

ECF 37; *see also* ECF 34 at 2.

On April 27, 2022, the Court of Appeals of Maryland issued an opinion ("Maryland Opinion"), in which it concluded that "the Chief Judge acted within her authority when, in her capacity as administrative head of the Maryland Judiciary, she issued the administrative tolling

4

order concerning the timeliness of complaints filed in Maryland courts during the pandemic." *Murphy v. Liberty Mut. Ins. Co.*, 2022 WL 1239000, at *1 (Md. Apr. 27, 2022). This Court permitted the parties to submit supplemental briefing on the Motion in light of the Maryland Opinion, ECF 40, and Plaintiff did so, ECF 41.

## II.   STANDARD OF REVIEW

Defendants contend that dismissal is warranted pursuant to both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Federal Rule of Civil Procedure 12(b)(1) governs motion to dismiss for lack of subject matter jurisdiction. Plaintiff brought this suit in federal court on the basis of diversity jurisdiction, which exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the litigation is between citizens of different states. 28 U.S.C. § 1332(a)(1). As the party asserting a court's power to adjudicate the claim or controversy before it, the plaintiff bears the burden of demonstrating that jurisdiction, in fact, exists. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (If "a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence."). In ruling on such a challenge, courts may consider evidence outside of the pleadings. *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). While the plaintiff bears the burden of proving that a court has jurisdiction over the claim or controversy at issue, a Rule 12(b)(1) motion should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*.

Defendants also posit that the Amended Complaint must be dismissed pursuant to Rule 12(b)(6). Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way

of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions[.]") (quotation omitted); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).

Plaintiff has attached several exhibits to its Amended Complaint, including the Indemnity Agreement, the Bonds, the Demand Letter, and the Emergency Order. *See* ECF 1-1; ECF 1-2; 3CF 1-3; ECF 17-2. At the motion to dismiss stage, courts generally do not consider extrinsic evidence. It is well-recognized, however, "that the court may consider, without converting the motion to dismiss into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is 'integral to the complaint and there is no dispute about the document's authenticity.'" *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (quoting *Goines*, 822 F.3d at 166). A document is "integral" where its "very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotation marks omitted) (emphasis removed). Applying those standards, these documents are integral to the Complaint because their existence form the basis of Plaintiff's claim. No party has challenged their authenticity, and this Court

6

accordingly deems it appropriate to consider them in adjudicating Defendants' Motion, without converting the Motion into one for summary judgment.

### III. DISCUSSION

In their Motion, Defendants argue that any payments made by Developers more than three-years prior to July 2, 2020—the date of the filing of this action—are facially time-barred, and may therefore not be included in the calculation of the amount-in-controversy for jurisdictional purposes. *See* ECF 23 at 5-6. Under Defendants' theory, then, Plaintiff's alleged damages can be summarized as follows:

| Defendants' Damages Theory ||||||
|---|---|---|---|---|---|
| **Category** | **Payee** | **Date** | **Timeliness** | **Amount** ||
| **Payment Bond Claimants** | Neff | 4/12/2017 | Time Barred | $17,650.37 ||
| | Barker Steel | 4/12/2017 | | $11,134.41 ||
| | Schuster | 4/12/2017 | | $8,361.82 ||
| | Maryland Concrete | 8/8/2017 | Actionable | $16,200.00 ||
| | Merritt | 8/24/2017 | | $30,100.00 ||
| | Hascon | N/A | | ($10,000.00) ||
| | Time Barred Claim Costs | | | | $37,146.60 |
| | Actionable Claim Costs | | | | $36,300.00 |
| | Total Claim Costs | | | | $73,446.60 |
| **Surety Consultants** | Guardian | 2/8/2017 | Time Barred | $5,432.56 ||
| | | 3/22/2017 | | $5,725.50 ||
| | | 4/20/2017 | | $115.50 ||
| | Time Barred Consultant Costs | | | | $11,273.56 |
| | Actionable Consultant Costs | | | | $0.00 |
| | Total Consultant Costs | | | | $11,273.56 |
| **Legal Fees** | Briglia McLaughlin | 3/30/2017 | Time Barred | $10,029.70 ||
| | | 5/4/2017 | | $7,414.26 ||
| | | 7/19/2017 | Actionable | $3,008.60 ||
| | | 10/24/2017 | | $2,951.96 ||
| | | 2/3/2018 | | $1,176.22 ||
| | Time Barred Legal Fees | | | | $17,443.96 |
| | Actionable Legal Fees | | | | $7,136.78 |
| | Total Legal Fees | | | | $24,580.74 |
| **Time Barred Damages** | | | | | **$65,864.12** |
| **Actionable Damages** | | | | | **$43,436.78** |
| **Total Damages** | | | | | **$109,300.90** |

Plaintiff counters that the Emergency Order plainly tolled the limitations period such that claims for damages that would have run between March 16, 2020 and the filing of this action were preserved. The success of Defendants' Motion, therefore, depends on avoiding the application of the Emergency Order by establishing either that: (1) the Emergency Order does not apply to

diversity claims in federal court or; (2) the Emergency Order is invalid.  Both of Defendants' arguments fail.

First, this Court has already considered and rejected Defendants' assertion that the Emergency Order is procedural law that does not apply to this Court in diversity.  Having already examined and dismissed this position, this Court finds it is unnecessary to reiterate its earlier analysis herein.[3]  ECF 34 at 5-8.  Suffice to say that this Court—like other federal courts that have considered similar state court pandemic orders—remains confident that the Emergency Order is substantive law that it is bound to apply when sitting in diversity.  *See id.* at 6-7 (collecting cases).

Defendants' second attack on the Emergency Order is likewise foreclosed by the Maryland Opinion.  This Court previously observed that the sole barrier to the application of the Emergency Order in this Court is its potential invalidity.  ECF 34 at 8.  Since that time, the State's highest court has dispelled any such ambiguity.  In a thorough and well-reasoned opinion, the Court of Appeals of Maryland confirmed that the Emergency Order constituted a valid exercise of Chief Judge Barbera's authority under Maryland law.  *See generally Murphy*, 2022 WL 1239000.  Given that this Court's role when considering an issue of state law is to "interpret the law as it believes that state's highest court [] would rule," this Court sees no reason to diverge from the definitive ruling in the Maryland Opinion.  *Abadian v. Lee*, 117 F.Supp.2d 481, 485 (D.Md.2000) (citing *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992), cert. denied, 506 U.S. 824 (1992)).

Having determined the applicability and validity of the Emergency Order, Defendants' Motion essentially collapses.  Plaintiff's single claim for breach of contract is governed by the

---

[3] This Court incorporates by reference the reasoning in its prior Opinion, ECF 34 at 5-8, determining that the Emergency Order is substantive law such that this Court must import and apply its tolling effect as required by *Erie*.

default, three-year statute of limitations for civil actions under Maryland law. *See* Md. Code, Cts. & Jud. Proc. § 5-101; *see also Cain v. Midland Funding, LLC,* 475 Md. 4, 37, 256 A.3d 765, 784 (2021) (collecting cases). Under the applicable limitations period, as tolled by the Emergency Order, any claim for damages that accrued on or after March 16, 2017 was timely filed on July 2, 2020. Put differently, any indemnified costs that Developers paid from March 16, 2017, onward are properly before this Court. *See Star Mgmt. Grp., LLC v. Greenberg*, 2021 WL 1546943, at *4 (Md. Ct. Spec. App. Apr. 20, 2021) (Under Maryland law, "an action for indemnification accrues, and the limitations period commences to run . . . from the time the indemnitee pays or is ordered to pay the third-party who is harmed."); *see also Hanscome v. Perry*, 75 Md. App. 605, 614 (1988) ("[A]n action for indemnification accrues and the limitations period commences not at the time of the underlying transaction but when the would-be indemnitee pays the judgment arising from the underlying transaction.").

Applying these principles, Plaintiff's alleged damages easily satisfy the requisite amount-in-controversy threshold.[4] Simply put, Plaintiff has timely alleged over $100,000 in monetary damages that it contends are recoverable from Defendants under the Indemnity Agreement such

---

[4] All but one of the payments rendered by Developers to third-parties occurred after March 16, 2017. Plaintiff's alleged damages—less the $5,432.56 paid to Guardian in February, 2017—amount to $103,868.34. Plaintiff, for its part, argues that the Guardian payment is timely because consulting and legal fees accrue on the date that an underlying claim against the Bonds was satisfied, rather than the date that the consulting and legal fees were paid by Developers. *See* ECF 41 at 5. This Court is skeptical of Plaintiff's theory. The Indemnification Agreement defined indemnifiable loss to include "all fees and costs for consultant . . . or other services related to the investigation or defense of *actual or potential claims and losses*." ECF 1-1 at 1. Given that Developers' right to be indemnified for consultant fees was not tethered to whether an actual claim materialized, this Court sees no reason to peg its accrual to the date that an underlying claim was satisfied rather than the date that Developers paid the invoice arising from the transaction with Guardian. It is unnecessary at this juncture, however, to definitively resolve the issue, because Plaintiff satisfies the amount-in-controversy requirement even excluding the February, 2017 payment to Guardian.

9

that it may properly invoke federal diversity jurisdiction. Defendants' Motion offers no other argument to support dismissal, and will resultantly be denied.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 23, is DENIED  A separate Order follows.


Dated: June 10, 2022                                   /s/
                                          Stephanie A. Gallagher
                                          United States District Judge